IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guillermo Ortiz, | No. CV-09-45-PHX-MHM (LOA) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Janet Napolitano, et al., | |
| Respondents. | |

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (docket # 1) Petitioner contends that Respondents are holding him in mandatory detention pursuant to an "unwarranted and unreasonable interpretation of 8 U.S.C. § 1226(c)." (docket # 1) Petitioner further argues that the mandatory detention provision violates the substantive and procedural due process provisions of the Fifth Amendment and is "ultra vires." (docket # 1) Respondents argue that § 1226(c) is retroactive and applies to Petitioner because, after the provision's effective date, Petitioner was detained in non-DHS custody and then released. (docket # 14)

Because the Court finds that the mandatory detention provision does not apply to Petitioner, the Petition should be granted and the matter should be remanded to the Immigration Court to conduct an individualized bond hearing. The Court need not consider Petitioner's challenge to the constitutionality of the mandatory detention statute or his "ultra vires" argument.

## I. Statutory Background

On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Pub.L. No. 104-208, 110 Stat. 3009-586 ("IIRIRA"). Among the provisions that IIRIRA added to the immigration laws is the mandatory detention provision, 8 U.S.C. § 1226(c), which imposes mandatory detention upon aliens convicted of enumerated crimes upon release. Although the IIRIRA was enacted on September 30, 1996, implementation of the mandatory detention provision was deferred for two years, until October 9, 1998. *See Thomas v. Hogan*, 1:08-CV-417, 2008 WL 4793739, at *1 (M.D.Pa. Oct. 31, 2008) (discussing history of § 1226(c)). During that period, the "Transition Period Custody Rules" ("TPCR") were implemented. *See* IIRIRA § 303(b)(3) (found in the historical notes to 8 U.S.C. § 1226). These rules provided for individualized bond determinations for those who could demonstrate legal entry into the United States and that the alien did not present a substantial risk of flight or threat to persons or property. IIRIRA § 303(b)(3). *See Thomas,* 2008 WL 4793739, at *1; *Martinez v. Greene*, 28 F.Supp.2d 1275, 1280 (D.Colo. 1998). The IIRIRA's Transition Period Custody Rules expired on October 9, 1998, and the mandatory detention provision, 8 U.S.C. § 1226(c) took effect. Section 1226(c) requires the mandatory detention of certain criminal aliens and provides that:

> (c) Detention of criminal aliens
>
> (1) Custody. The Attorney General shall take into custody any alien who-
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> **when the alien is released**, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien

may be arrested or imprisoned again for the same offense.

8 U.S.C. 1226(c) (emphasis added).

If a detainee falls under any of the provisions of § 1226(c), he is subject to mandatory detention during removal proceedings, meaning he is not afforded an individualized bond determination by an immigration judge. 8 C.F.R. § 1003.19(h)(2)(i)(D).

**II. Factual and Procedural Background**

Petitioner, a native and citizen of Mexico, entered the United States at El Paso, Texas on or about December 10, 1980, and subsequently obtained lawful permanent resident status. (Respondents' Exh. 1, docket # 1 at 4) Petitioner has been married to a United States citizen since August 5, 1988 and has two children who are U.S. citizens. (docket # 1 at 5) Petitioner's youngest child suffers from mental retardation. (docket # 1 at 5; Respondents' Exh. 6 at 2)

On May 13, 1991, nearly seven years before the mandatory detention provision went into effect, Petitioner was convicted in the Superior Court of California, Los Angeles County, of the following offenses: (1) Robbery in the Second Degree, in violation of California Penal Code § 211, with an enhancement for § 12022.5(a), use of a firearm, and (2) for Attempted Robbery in the Second Degree in violation of § 664 and § 211 of the California Penal Code, with an enhancement for § 12022.5(a), use of a firearm. (Respondents' Exh. 2) Petitioner was sentenced to two years of imprisonment for the robbery conviction and to an additional 3 years for the enhancement. (Respondents' Exh. 2; docket # 1 at 5) Petitioner served 2.5 years of his 5 year sentence, and completed his sentence in 1993, well before the effective date of the mandatory detention provision. (docket # 1 at 5; Respondents' Exh. 6 at 2)

On August 22, 2008, Petitioner was arrested by the Maricopa County Sheriff for Extreme DUI-BAC of .15 or more. He was subsequently convicted of violating A.R.S. § 28-1382A and was sentenced to ten days in the Maricopa County Jail. (docket # 1 at 5; Respondents' Exhs. 3, 5) Petitioner was released on August 31, 2008, and was taken into

custody by Immigrations and Customs Enforcement ("ICE"). (Respondents' Exhs. 3, 5) On or about September 1, 2008, the Government served Petitioner a Notice of Custody Determination, Form I-286, holding him without bond, and subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). (Respondents' Exh. 5)

On September 3, 2008, Petitioner was charged with removability, based on his 1991 second degree robbery conviction. Specifically, on September 3, 2008, a Notice to Appear ("NTA") was issued charging Petitioner as removable pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") for having been convicted of an aggravated felony, as defined in INA § 101(a)(43)(F), in 1991. (Respondents' Exh. 4)

On September 15, 2008, the Government filed Additional Charges of Inadmissibility/Deportability, adding allegations that Petitioner's 1991 conviction was enhanced based on his personal use of a firearm pursuant to California Penal Code § 12022.5(a), and adding a charge of removal pursuant to 8 U.S.C. § 1227(a)(2)(C), an alien "convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device. . . . " (Respondents' Exh. 7)

Petitioner requested redetermination of his custody status pursuant to 8 C.F.R. § 1236.1(d).  Accordingly, on September 15, 2008, Petitioner appeared before an Immigration Judge ("IJ"). The IJ denied Petitioner's request for a change in custody status. The IJ explained that "because [Petitioner] stands convicted of an aggravated felony, he is subject to mandatory detention and the Court has no jurisdiction to redetermine his custody status. INA § 236(c)(1)(A); 8 C.F.R. § 1003.19(h)(2)(i)(D)." (Respondents' Exh. 6) y

On October 10, 2008, Petitioner appealed the September 15, 2008 decision to the Board of Immigration Appeals ("BIA"). (Respondents' Exhs. 8, 9) On December 19, 2008, the BIA summarily affirmed the IJ's bond decision. (Respondents' Exh. 11) On January 8, 2009, Petitioner filed a motion for reconsideration and a request for review by a

- 4 -

three judge panel. (Respondents' Exh. 12) On January 21, 2009, the Government responded. (Respondents' Exh. 13)   To date, the record does not include information regarding the outcome of this proceeding which was pending when briefing closed.

**III. Discussion**

        **A. Jurisdiction**

There is no dispute that this Court has subject matter jurisdiction to review the pending Petition for Writ for Habeas Corpus under 28 U.S.C. § 2241(c)(3) (noting that the writ of habeas corpus may extend to those "in custody in violation of the Constitution or laws or treaties of the United States."); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003) (finding that the INA does not bar habeas review of statutory or constitutional challenges to detention).

        **B. Mandatory Detention under Section 1226(c)**

Petitioner challenges his mandatory detention under 8 U.S.C. § 1226(c). Section 1226(c) requires mandatory detention when an alien is taken into state custody for an offense enumerated in the statute and is subsequently released. 8 U.S.C. § 1226(c). A conviction for second degree robbery would qualify an alien for mandatory detention. However, Petitioner's conviction and custody for that offense occurred before § 1226(c) took effect in 1998. Petitioner asserts that he is not subject to mandatory detention because he was not released from custody for a removable offense after the October 8, 1998 effective date of 8 U.S.C. § 1226(c). (docket # 1) Respondents argue that because Petitioner was charged with a removable offense based on his 1991 conviction, and was later arrested and released from custody in 2008 - after the effective date of § 1226(c) - he is subject to mandatory detention. (docket # 14) Thus, the issue is whether Petitioner's release from state custody for unrelated charges after § 1226(c) took effect is considered in conjunction with his earlier conviction to qualify Petitioner for mandatory detention.

As discussed below, consistent with every district court that has considered this issue, the Court concludes that the mandatory detention provision, 8 U.S.C. § 1226(c), does

- 5 -

not apply to Petitioner because he was released from custody for the removable offense well before the effective date of the mandatory detention provision. *See, e.g., Pastor-Camarena v. Smith*, 977 F.Supp. 1415, 1417 (W.D. Wash. 1997) (holding that "[t]he plain meaning of ['when the alien is released'] is that it applies immediately after release from incarceration, not to aliens released many year [sic] earlier"); *Alwaday v. Beebe*, 43 F.Supp.2d 1130, 1133 (D.Or. 1999) (finding it is "arbitrary and capricious for respondent to interpret the phrase 'when the alien is released' to include aliens, like petitioner, who were released from incarceration many years before coming into the custody of the INS for deportation proceedings" (internal quotations and alterations omitted)); *Velasquez v. Reno*, 37 F.Supp.2d 663, 671-73 (D.N.J.1999) (holding that the mandatory detention provision is inapplicable to alien who was released from custody for a removable offense thirteen years before the effective date of the statute, but was taken into custody and made subject to removal proceedings after the effective date); *Rivera v. Demore*, C 99-3042 TEH, 1999 WL 521177, at *5 (N.D.Cal. July 13, 1999) (finding that petitioner who was released from criminal custody three years before the statute's effective date is "well beyond section [1226(c)'s] temporal reach"); *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1132 (S.D.Cal. 1999) (holding that an alien was subject to section 1226(c) because his post-October 9, 1998 release from custody related to the underlying offense that rendered him removable): *Grant v. Zemski*, 54 F.Supp.2d 437, 442 (E.D.Pa.1999) (rejecting argument that Congress intended for the mandatory detention provision to apply regardless of when the individual was released); *Vang v. Ashcroft*, 149 F.Supp.2d 1027, 1034 (N.D.Ill.2001) (finding that § 1226(c) is inapplicable to alien released prior to statute's effective date); *Quezada-Bucio v. Ridge*, 317 F.Supp.2d 1221, 1224 (W.D.Wash.2004) (finding that petitioner who was released from state custody and was not taken into immigration custody until three years later was not subject to mandatory detention under Section 1226(c)); *Bromfield v. Clark*, No. C-06-757-RSM, 2007 WL 527511, at *4-5 (W.D.Wash. Feb.17, 2007) (declining to defer to BIA's decisions

and concluding that the "when the alien is released" requires aliens to be detained at the time of release from state custody).

Petitioner's 2008 DUI conviction is not a removable offense and does not trigger the mandatory detention provision. *See* 8 U.S.C. § 1226(c). Petitioner's 1991 conviction for second-degree robbery is an enumerated offense under U.S.C. §§ 1227(a)(2)(B)(i) and (iii). Petitioner completed his sentence for that offense before the IIRIRA was enacted in 1996 and before the mandatory detention provision took effect in 1998. The IIRIRA applies prospectively, to noncitizens "released" on or after the statute's effective date. *See* Pub.L. 104-208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009-586. Congress expressly provided that 8 U.S.C. § 1226(c) "shall apply only to individuals released after [the statute took effect.]" IIRIRA § 303(b); Pub.L.104-208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009-586. 8 U.S.C. § 1226(c); *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1111 (BIA 1999) (finding that "the respondent is not subject to mandatory detention under section [1226(c) ] of the Act because he was released from his nonservice custodial setting (i.e., from criminal custody) prior to the expiration of the Transition Rules"); *see also In re Rojas*, 23 I. & N. Dec. 117, 126-27, Interim Decision, (BIA 2001) ("We are not, however, applying section 236(c) to aliens who were released from criminal custody prior to the date on which the provision went into effect. We have previously determined that such aliens are beyond the reach of section 236(c)") (citation omitted).

Respondents assert that Petitioner is subject to mandatory detention under § 1226(c) because he was "released" from custody in September 2008 -after the mandatory detention provision became law-even though that detention had no relation to the 1991 conviction which renders him removable. The Court disagrees. Petitioner was last released from custody for conduct included in the NTA in 1993, before the effective date of § 1226(c). Petitioner's 2008 conviction is not included in the NTA and is not related to the removal proceedings.

- 7 -

Finding no binding precedent on the issue, the Court follows the persuasive reasoning of several district courts in other circuits in concluding that, because Petitioner's 2008 release from custody is not related to the 1991 offense rendering him removable, the mandatory detention provision does not apply and Petitioner is entitled to an individualized bond hearing. *See Garcia v. Shanahan,* ___ F.Supp.2d ___, 2009 WL 1395837 (S.D.N.Y., May 1, 2009); *Hy v. Gillen*, 588 F.Supp.2d 122 (D.Mass. 2008); *Thomas v. Hogan*, No. 1:08-CV-0417, 2008 WL 4793739 (M.D.Pa., Oct. 31, 2008); *Cox v. Monica*, No. 1:07-CV-534, 2007 WL 1804335 (M.D. Pa. June 20, 2007); *Quezada-Bucio v. Ridge*, 317 F.Supp.2d 1221, 1229 (W.D.Wash. 2004). *See also Martinez-Herrera v. Crawford*, CV-07-267-PHX-NVW (DKD), 2007 WL 2023469 (D.Ariz., June 20, 2007) (characterizing as "strong" petitioner's argument that because his "release" from custody for the crime subjecting him to mandatory detention occurred five years ago, § 1226(c) should not apply, but recommending relief on other grounds).

In *Cox*, petitioner challenged his detention pursuant to § 1226(c). Cox, a native and citizen of Barbados, was taken into ICE custody in February 2007 pursuant to a Notice to Appear (NTA), which charged him with removability based on three previous convictions. *Cox*, 2007 WL 1804335, at *2. Although Cox had been released from state custody in November 2006, he was in custody for an offense that did not render him removable. *Id.* His latest release for a removable offense occurred in January 1998-nine months before the effective date of the mandatory detention provision. *Id.* Nevertheless, an immigration judge denied Cox's request for bond, finding that he was subject to mandatory detention because he had been "released" from custody in 2006. *Id.* Cox sought habeas relief in the Pennsylvania district court and was granted relief.

On habeas corpus review, the court noted that, "Congress has expressly provided that 8 U.S.C. § 1226(c) is to be applied only prospectively to aliens who were released from criminal custody after the statute took effect" *id.* at *4 (citing *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 160-61 (3d Cir.1998)), and "conclude[d] that the statutory

- 8 -

1 provision does not retroactively apply to aliens who were released from custody prior to its
2 effective date because the provision clearly attaches new legal consequences to actions taken
3 before its enactment." *Id.* at * 5.  The court further held, "Petitioner's 2006 arrest [and release
4 from custody] does not alter this conclusion as . . .the date of release from the offense for
5 which the individual is found removable determines whether the individual is entitled to an
6 individualized bond hearing or the mandatory detention provision." *Id*. at *5 (citing *Alikhani
7 v. Fasano*, 70 F.Supp.2d 1124, 1132 (S.D.Cal. 1999); *Grant v. Zemski*, 54 F.Supp.2d 437,
8 442 (E.D.Pa. 1999); *Velasquez v. Reno*, 37 F.Supp.2d 663 (D.N.J. 1999)).  The *Cox* court
9 concluded that "ICE's attempt to reap the benefits of section [1226(c)] by applying the
10 mandatory detention provision to aliens such as petitioner is overreaching and inconsistent
11 with the scheme established by Congress." *Id*.

12 After *Cox* was decided, the BIA issued *Matter of Saysana*, 24 I. & N. Dec. 602,
13 2008 WL 3978211 (BIA Aug. 27, 2008), in which it interpreted Section 1226(c) to require
14 mandatory detention of deportable aliens who were released from custody for non-removable
15 offenses after the effective date of the statute.  In *Saysana*, the BIA considered whether the
16 post-IIRIRA "release" from custody "must be directly tied to the basis for detention under
17 [section 1226(c)]." 24 I. & N. Dec. 602 at 603-04.  The BIA concluded a "release" from
18 custody need not relate to the removable offense for mandatory detention to apply. *Id*. at 608.

19 Respondents argue that this Court should defer to the BIA's interpretation of §
20 1226(c) in *Saysana* under *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc*., 467 U.S. 837
21 (1984), and deny the Petition for Writ of Habeas Corpus. (docket # 14)  As discussed below,
22 the BIA's decision in *Saysana* is not entitled to deference.

23 In *Chevron*, the Supreme Court articulated a two-step analysis for reviewing an
24 administrative agency's interpretation of a statute. *Id*.  Under *Chevron*, the court first
25 considers "whether Congress has directly spoken to the precise question at issue." *Id*. at 842.
26 If Congress' intent is clear, "that is the end of the matter; for the court, as well as the agency,
27 must give effect to the unambiguously expressed intent of congress." *Id*. at 842-43.  At the

28
- 9 -

first step the court should "try to determine congressional intent using traditional tools of statutory construction," by looking at the language and the "provisions of the whole law, and to its object and policy." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990) (citations omitted). If Congressional intent is not clear because the statute is "silent or ambiguous with respect to the specific issue," then the court proceeds to *Chevron's* second step. At step two, the court determines whether the agency's determination is reasonable, meaning whether it is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The agency's interpretation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44.

The BIA's interpretation of § 1226(c) in *Saysana* is not entitled to deference under *Chevron*. As the District Court for the Southern District of New York recently found on analogous facts, "the plain language of the statute is unambiguous and manifests Congress' clear intent that there must be a nexus between the date of release and the removable offense." *Garcia*, 2009 WL 1395837, at * 6.

In *Garcia*, the District Court for the Southern District of New York considered a factually analogous case. In *Garcia*, petitioner challenged his mandatory detention under § 1226(c). *Garcia*, 2009 WL 1395837, * 2. In 1989, petitioner had pled guilty to attempted criminal sale of a controlled substance in the third degree. *Id.* Garcia was sentenced to five years probation, with six months' incarceration. He completed his sentence before the enactment of § 1226(c). *Id.* On March 8, 2008, Garcia was arrested on charges unrelated to the 1989 conviction. The charges were dismissed and Garcia was released. Several days after his release from custody, Garcia was charged with removal based on his 1989 conviction, and taken into ICE custody on the ground that he was subject to mandatory detention under § 1226(c). *Garcia*, 2009 WL 1395837, at * 2. After an immigration judge determined that Garcia was subject to mandatory detention, he sought habeas corpus relief. *Id.* Similar to this case, the Government argued that the BIA's statutory interpretation of the

1 mandatory detention statute in *Saysana* was entitled to *Chevron* deference. *Id.* at * 5. The court rejected that argument.

At the first *Chevron* step, the *Garcia* court held, "[v]iewing the 'when released' language in light of the section as a whole, it is clear that the 'release' triggering mandatory detention must be related to the underlying qualifying offense." *Id.* (quoting H*y v. Gillen*, 588 F.Supp.2d 122 (D.Mass. 2008)). In so finding, the *Garcia* court adopted the following reasoning of the District Court of Massachusetts in *Hy v. Gillen*, 588 F.Supp.2d 122 (D.Mass. 2008) (holding that alien was not subject to mandatory detention where he was released from offense rendering him removable four years before § 1226(c) took effect). In *Hy*, the court noted that the "when released" language immediately follows the enumerated offenses, and the clause is further modified by language providing that detention is required whether or not the alien may, among other things, be arrested again "for the same offense." The reference to the "same offense" in the phrase modifying the "when released" language suggests that the whole clause applies to a release from custody for the offense rendering the alien removable. Because the entire section speaks of certain qualifying offenses, it is only natural to read the "when the alien is released" clause to mean "when the alien is released from custody arising from the qualifying offense." *Id.*

The court in *Hy* thus found that § 1226(c) was not ambiguous and that Congress' intent was that mandatory detention bar an individualized bail determination only when the alien was released from custody for a deportable offense and thereafter picked up by ICE. *See Id.*

The *Hy* court proceeded to the second *Chevron* step, and held, "[e]ven if the language is ambiguous, the Government's interpretation is unreasonable." *Id.* The court noted that "under the Government's reading, an alien who committed a qualifying offense years before the statute took effect could be subject to mandatory detention decades later if he is taken into state custody for even the most trivial offense, whether he is convicted or not," and that "[e]ven an illegal arrest would be enough to trigger mandatory detention." *Id.*

- 11 -

at 127.  The court further noted that "the Government's reading sweeps in the group of criminal aliens most likely to qualify for a bond because only prior criminals who have been released for at least ten years are affected by the interpretation." *Id.*   The *Hy* court held that "[b]ecause the 2007 'release' from state custody is not related to the 1991 offense rendering Petitioner removable, Petitioner is not subject to mandatory detention." *Id.*

In *Garcia*, the Southern District of New York reached the same conclusion in reliance on the *Hy* decision.  In *Garcia*, the court held that the mandatory detention provision does not apply to an alien who was released from custody for a removable offense prior to the October 9, 1998 effective date of § 1226(c), but had been released from custody for a nonremovable and unrelated offense after the effective date of that provision.  *Garcia v. Shanahan*, 2009 WL 1395837 (S.D.N.Y., May 1, 2009).

This Court adopts the reasoning of the District of Massachusetts and the Southern District of New York under the *Chevron* analysis.  The BIA's decision in *Saysana* is not entitled to deference.  This issue in this case can be resolved at the first step of the *Chevron* analysis "by looking at the plain language of the statute which indicates that there must be a nexus between the basis for custody from which the noncitizen is released and the qualifying offenses for mandatory detention." *Garcia*, 2009 WL 1395837, at * 7.

In contrast, BIA's interpretation of § 1226(c) does not follow traditional rules of statutory construction.  "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW, Inc. v. Andrews,* 534 U.S. 19, 31 (2001) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted)).  BIA's interpretation that "when the alien is released" applies to any offense renders a later reference to the "same offense" meaningless.  *Garcia*, 2009 WL 1395837, at * 7.

As the *Garcia* court noted, "all district courts that have considered whether an alien must be mandatorily detained pursuant to Section 1226(c) after [the BIA's decision in] *Saysana*–including the district court considering Saysana's own habeas petition-have also

- 12 -

rejected the BIA's interpretation of the statutory language." *Garcia*, 2009 WL 13595837, * 7 (citing *Thomas v. Hogan*, 1:08-CV-417, 2008 WL 4793739, at *3-4 (M.D.Pa. Oct.31, 2008); *Saysana v. Gillen*, No-08-11749, 2008 WL 5484553, at *1 (D.Mass. Dec.1, 2008); *Hy*, 588 F.Supp.2d at 126. *Oscar v. Gillen*, 595 F.Supp.2d 166, 170 (D.Mass.2009).

Moreover, as the *Garcia* court found, *Saysana* represents a change in position for the BIA. *Garcia*, 2009 WL 1395837, at * 8. In an internal memorandum, dated July 12, 1999, the Immigration and Naturalization Service ("INS"), DHS's predecessor, stated that the "when . . . released" language in section 1226(c) refers to (1) a criminal sentence of incarceration, (2) for one of the offenses enumerated in § 1226(c). *See Garcia*, 2009 WL 13595837, at * 8 (citing Michael A. Pearson, Executive Associate Commissioner for Field Operations Headquarters, Field Guidelines for Applying Revised Interpretation of Mandatory Custody Provisions, July 12, 1999 ("DHS Internal Memo"), at 1)). The memo stated: "'[T]he Office of Immigration Litigation has recommended a reinterpretation of the statute . . . . The reinterpretation will now only mandate detention of those criminal aliens listed in [1226(c)] who completed their criminal sentences on or after October 9, 1998." The memo specified that "release" must occur on or after October 9, 1998 from a criminal sentence " based on a removable offense, regardless of the date of such conviction . . . ." *Id*. (quoting Michael A. Pearson, Executive Associate Commissioner for Field Operations Headquarters, Field Guidelines for Applying Revised Interpretation of Mandatory Custody Provisions, July 12, 1999 ("DHS Internal Memo"), at 1)).

When determining the weight to be afforded an agency's position, the court should consider the surrounding circumstances. *See U.S. v. Ten Cartons, Ener-B Nasal Gel*, 888 F.Supp. 381, 412 (E.D.N.Y.1995) (citing *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993)). "Although inconsistency in itself is not enough to render *Chevron* deference inappropriate-especially if the statute is ambiguous, *see Rust v. Sullivan*, 500 U.S. 173, 186 (1991) - 'an agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation may be entitled to considerably less deference than a

consistently held agency view.'" *Garcia,* 2009 WL 1395837, at * 8 (quoting *Ten Cartons*, 888 F.Supp. at 413).

In view of the plain language of § 1226(c), the case law supporting Petitioner's argument, and the BIA's own conflicting interpretations of § 1226(c), the Court finds that the BIA's statutory reading is not entitled to deference.

Petitioner also raises equal protection and due processes challenges to his detention under § 1226(c). He further argues that the mandatory detention provision is "ultra vires." (docket # 1)  The Court need not reach these issues because the statutory construction issue is dispositive. *Aguilar v. Lewis*, 50 F.Supp.2d 539, 544 (E.D.Va.1999) (citing *Jean v. Nelson*, 472 U.S. 846, 854 (1985).

**IV. Conclusion**

For the foregoing reasons, the Petition for Writ of Habeas Corpus should be granted and Petitioner should be provided an individualized bond hearing before an Immigration Judge.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus (docket # 1) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that, if the Honorable Mary H. Murguia adopts this Report and Recommendation, an Immigration Judge must provide Petitioner with an individualized bond hearing within 10 days of the date of such order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure to timely file objections to the Magistrate

Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of June, 2009.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge